IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BEHNAZ SOHEILIESTAHBANATI, | § § | |
| *Petitioner,* | § § § | 5:26-CV-00154-FB-RBF |
| vs. | § § § | |
| PAMELA JO BONDI, *ET AL.*, | § § | |
| *Respondents.* | § § § § § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Behnaz Soheiliestahbanati's Petition for Writ of Habeas Corpus, *see* Dkt. No. 1 ("Pet." or "Petition"); *see also* Dkt. Nos. 8 (Response to Petition) & 10 (Reply in Support of Petition), and Motion to Enforce Requested Habeas Relief, *see* Dkt. Nos. 12 (Motion) & 13 (Response to Motion). Pretrial matters are referred for resolution, pursuant to Rule CV-72 and Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 11. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Petition for Writ of Habeas Corpus, Dkt. No. 1, should be **GRANTED IN PART AND DENIED IN PART**, as provided herein. Petitioner should be released from Federal Respondents'[1] custody under conditions of release substantially

---

[1] The Court hereinafter refers to all Respondents, save the Warden of the Karnes County Immigration Processing Center, as "Federal Respondents."

similar to the conditions of her previous Order of Supervision. Any relief not recommended herein should be **DENIED**. In light of the foregoing, and upon the District Judge's adoption of this recommendation, Petitioner's Motion to Enforce, Dkt. No. 12, should be **MOOT**.

### Factual and Procedural Background

Petitioner is an Iranian national. Petitioner alleges that, in Iran, she suffered severe persecution at the hands of her husband, "a strict Sunni Muslim adherent who forcibly imposed his religious beliefs on her and subjected her to abuse and punishment when she refused to comply." *Id*. at 7. She initially fled to Ecuador, where she lived for about four years before unlawfully entering the United States in March 2022. Dkt. No. 1 at 6. She never obtained Ecuadorian nationality. *Id*.

Upon her entry into the United States, Petitioner was apprehended by immigration authorities and placed into expedited removal proceedings. Dkt. No. 8 at 1. She claimed a fear of returning to Iran and was issued a Notice to Appear before an Immigration Judge (IJ). *See id*. at. 2. In November 2022, the IJ ordered Petitioner removed to Iran or, in the alternative, Ecuador. *See* Dkt. No. 1 at 17 (Order of the IJ). Before her removal, however, she was granted a withholding of removal under the U.N. Convention Against Torture (CAT), and ICE, in an exercise of discretion pursuant to agency policy in effect at that time, released Petitioner under an Order of Supervision (OSUP) in lieu of removing her to a third country, like Ecuador. *See id*. at 21 (OSUP). Petitioner avers—and Federal Respondents did not dispute at the hearing held on March 24, 2026—that since her release pursuant to the OSUP she has fully complied with and never violated her conditions of release. *See* Dkt. No. 1 at 2.

"After a change in policy in [June] 2025," ICE apprehended Petitioner on her way to work and began processing her for third-country removal. Dkt. No. 8 at 2; *see also* Dkt. No. 1 at

2. Upon her apprehension, ICE served Petitioner with a Notice of Revocation of Release. The Notice provides in relevant part:

> This letter is to inform you that your supervision has been revoked, and you will be detained in the custody of [ICE] at this time . . . ICE has determined that you have violated conditions of your release that were listed in the Order of Supervision you were issued at the time of your release from custody . . . .
>
> OR
>
> ICE has determined that you can be expeditiously removed form the United States pursuant to the outstanding order of removal against you.

Dkt. No. 8-1 at 1. Federal Respondents, in their briefing and on the record at the March 24 hearing, confirmed that the change in circumstances supporting Petitioner's re-arrest and detention was a change in ICE policy towards third-country removal that makes Petitioner's removal to a country other than Iran, in Federal Respondents' view, reasonably foreseeable.

Petitioner has been in ICE custody since being detained on her way to work on June 25, 2025. Dkt. No. 1 at 6-9. She remains detained at the Enforcement and Removal Options (ERO) Karnes County Immigration Processing Center in Karnes, Texas. *Id*. at 2.

### Analysis

Petitioner seeks her immediate release on due process grounds because: (1) she did not receive adequate notice and opportunity to be heard prior to and in connection with her re-arrest and re-detention, and (2) there is no indication she will be removed in the reasonably foreseeable future, *see Zadvydas v. Davis*, 533 U.S. 678 (2001). *See id* at 12-14. Relief is warranted on the second claim. The Court does not address the first.

**A.    The Court Has Jurisdiction to Address the *Zadvydas* Claim.**

Although Federal Respondents don't appear to contest the Court's jurisdiction, the Court addresses the topic *sua sponte*, as it must. In this regard, the Court begins (and ends) with the

second of Petitioner's claims, which is his claim brought pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001). Although the Immigration and Nationality Act curtails the jurisdiction of federal district courts, it does not bar federal district courts from considering habeas petitions challenging a petitioner's indefinite detention following entry of a final order of removal. *See, e.g.*, *Zadvydas*, 533 U.S. at 688. Accordingly, the Court has jurisdiction to address Petitioner's challenge to the foreseeability of her removal following entry of a final order of removal. And because the Court ultimately recommends a grant of relief on this claim, there is no need to address jurisdiction over, or the merits of, her other claim for habeas relief.

        **B.**        **Petitioner's Removal is Not Reasonably Foreseeable.**

The limits on detention pending deportation, after an order of removal, are settled. "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. § 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory. *See id.* (citing 8 U.S.C. § 1231(a)(2)). "Upon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision." *Abuelhawa v. Noem*, 811 F. Supp. 3d 847, 855 (S.D. Tex. 2025) (citing 8 U.S.C. § 1231(a)(6)).

The 90-day removal period may be extended in at least three circumstances. *See Trejo v. Warden of ERO El Paso E. Montana*, 807 F.Supp.3d 697, 705 (W.D. Tex. 2025). Relevant here, an alien may be detained beyond the removal period if she is "(1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." *Guzman Chavez*, 594 U.S. at 528-29 (citing 8 U.S.C. § 1231(a)(6)).

"The statute does not specify a time limit on how long DHS may detain an alien in the post-removal period." *Id.* at 529. But due process demands that the alien not be detained indefinitely. *See Zadvydas*, 533 U.S. at 697. Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation into the statute"—namely, that post-removal detention may not last longer than "reasonably necessary to bring about that alien's removal[.]" *See id.* at 689-90. Recognizing that not all reasonably foreseeable removals can be accomplished within the three-month removal period, the Court has generally held that such detentions are "presumptively reasonable" for up to "six months." *Id.* at 701. After that point, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 701).

**1.** *Petitioner's statutorily prescribed, presumptively reasonable period of detention has expired.* To the extent Federal Respondents assert that Petitioner is lawfully detained either under the 90-day removal period or the presumptively reasonable six-month period, both contentions fail. When an alien "was previously detained, then released on supervised release, . . . his 90-day removal period has long expired." *See Balouch v. Bondi*, No. 9:25-cv-216-MJT, 2025 WL 2871914, at *2 (E.D. Tex. Oct. 9, 2025). And Petitioner was re-detained, at the latest, on or about the end of June of 2025. *See* Dkt. No. 8-2 at 2. Even the presumptively reasonable six-month period has now expired.

**2.** *To continue detaining Petitioner, Respondents must show it is likely Petitioner may be removed in the reasonably foreseeable future.* Before addressing whether removal is likely to occur in the reasonably foreseeable future, a discussion of burdens under *Zadvydas* is warranted.

As an initial matter, an immigration detainee who brings a claim under *Zadvydas before* expiration of the presumptively reasonable six-month period must *prove* "there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. But to make out a *Zadvydas* claim *after* the six months have run, a detained person need generally only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. And if she does so, "the Government must respond with evidence sufficient to rebut that showing." *Id*.

These burdens shift, however, when the petitioner was re-detained based on revocation of an OSUP. "After *Zadvydas*, the immigration regulations were revised to implement administrative review procedures for those aliens detained beyond the removal period, *including those who are re-detained upon revocation of their* [*OSUP*]." *Escalante v. Noem*, No. 9:24-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (emphasis added) (citations omitted). Under such circumstances, "the Service may revoke an alien's [OSUP] . . . and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Under this regulation, "it is [Respondents'] burden to show a significant likelihood that [Petitioner] may be removed." *See Escalante*, 2025 WL 2206113, at *3 (citing cases); *Balouch*, 2025 WL 2871914, at *2 (same); *see also, e.g.*, *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) ("[T]he regulations . . . place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future.") (citations omitted); *J.L.R.P. v. Wofford*, No. 1:25-cv-01464-KES-SKO, 2025 WL 3190589, at *4 (E.D. Cal. Nov. 14, 2025) ("[W]hen ICE revokes the [OSUP] of a noncitizen who

has been ordered removed to effectuate that noncitizen's removal, it is [ICE's] burden to show a significant likelihood that the alien may be removed.") (quotations and citations omitted).

       **3.**    *Petitioner's removal is not likely in the reasonably foreseeable future.* Respondents fail here to carry their burden. Moreover, even if the Court were convinced Petitioner must bear the initial burden to establish good cause, Petitioner has carried that burden here without a sufficient showing to constitute a rebuttal by the Government.

There is no evidence of any country willing to accept Petitioner should she be removed. Immigration authorities have been unable to execute her removal to Ecuador, and removal thereto seems highly unlikely given the evidence currently before the Court and the status updates provided on the record at the hearing on March 24. *See, e.g.*, Dkt. No. 1 at 6-8; Dkt. No. 10 at 3-4; Dkt. No. 12 at 3. Iran is not an option, as her Iranian passport has expired, and, as Petitioner noted at the hearing on March 24, the United States is currently engaged in an armed conflict with the country. *See* Dkt. No. 12 at 3. Efforts to seek removal or otherwise relocate to Austria and Switzerland are extremely unlikely given the applicable requirements for doing so. *See* Dkt. No. 12 at 9-10 (Ex. A), 12-17 (Ex. B). Indeed, as of early March, the Court has no information indicating any change with respect to those requests. Meanwhile, the mere existence of outstanding third-country requests (here, to Ecuador) is insufficient to show that Petitioner is likely to be removed in the reasonably foreseeable future. *See Trejo*, 807 F.Supp.3d at 706-07; *see also Medellin Martinez v. Bondi, et al.*, No. 5:25-cv-1319-OLG, Order Granting Petition for Writ of Habeas Corpus, at 5 (W.D. Tex. Nov. 21, 2025). Similarly, District Courts in this Circuit have held that the Government's burden to furnish evidence demonstrating that removal is significantly likely in the reasonably foreseeable future is not met by pending requests for travel documents alone. *See, e.g., Trejo*, 807 F.Supp.3d at 706-07.

Moreover, even if Petitioner were to bear the burden to show good cause, she has carried it, and Respondents have failed to rebut it. As a general matter, "[v]ery few people subject to withholding of removal or CAT relief are removed from the United States." *Puertas-Mendoza v. Bondi et al*, No. 5:25-cv-00890-XR, 2025 WL 3142089, at *3 (W.D. Tex. Oct. 22, 2025). "And that is not simply a matter of United States policy—foreign governments routinely deny requests to receive people who lack a connection to the would-be receiving country." *Id.* (quotations and citation omitted). Here, Petitioner demonstrated she cannot be removed to her country of origin, Iran, and Respondents have not identified a receiving country to which removal is reasonably foreseeable.

There are here, moreover, significant issues with the notice provided to Petitioner regarding the reasons for the revocation of her OSUP. The notice provided, for example, merely provides a boilerplate recitation to justify the revocation:

> You are advised that ICE has determined that you have violated conditions of your release . . . .
>
> OR
>
> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you.

Dkt. No. 8-1 at 1. A generic notice that there is either (1) some unnamed violation of conditions *or* (2) an unexplained determination of removability is akin to no notice, as the alien cannot infer with any certainty the basis for the revocation. If a notice is supposed to provide a reasonable means to understand the basis for an action and a reasonable opportunity to formulate a response, this notice, such as it is, falls well short. *See* 8 C.F.R. § 241.13(i) (mandating procedures by which the alien must be able to contest the revocation of his release).

"Taken together, the rareness of removal to a third country, . . . the long period of time between [Petitioner's] removal order and his detention, the initial lack of any explanation for [Petitioner's] detention in 2025, and the cursory explanation ultimately provided show that [Petitioner's] removal is not reasonably foreseeable." *See Puertas-Mendoza*, 2025 WL 3142089, at \*4 (citation omitted); *see also Villanueva v. Tate*, 801 F. Supp. 3d 689, 703-04 (S.D. Tex. 2025) (granting *Zadvydas* relief where detainee had withholding of removal to Mexico, Government had not tried to lift withholding order or to remove him for eight years, and no changed circumstances made removal reasonably foreseeable). In short, "Respondents have not demonstrated that any potential third country is likely to accept Petitioner." *See Medellin Martinez*, 5:25-CV-1319-OLG, Order Granting Petition for Writ of Habeas Corpus, at 5. "In the absence of such evidence, Respondents have failed to meet their burden[,]" *id*., and Petitioner is entitled to habeas relief under § 2241.

"The Court is mindful that the government has the right to enforce [Petitioners]'s Order of Removal. But the government may not detain [Petitioner] for an indefinite and undetermined period of time while it tries to effect that removal when the circumstances are such that [her] removal is not reasonably likely in the foreseeable future. Such an action violates the Due Process Clause, as explained in *Zadvydas*." *See Villanueva*, 801 F. Supp. at 704. Thus, Petitioner should be released. *See Zadvydas*, 533 U.S. at 699.

C.   **The Court Need Not Address Petitioner's Additional Argument Concerning Alleged Due Process Violations.**

Petitioner alleges as a predicate of an additional procedural due process claim that the Respondents' re-arrest, revocation of the OSUP, and other actions were taken without adequate pre-deprivation notice and opportunity to be heard, or were otherwise violative of due process protections. *See* Dkt. No. 1 at 9-13. Because the Court directs Petitioner's release pursuant to her

*Zadvydas* claim, this claim need not be addressed. The Court does note, however, that should Petitioner at some point be subject to further immigration proceedings, the procedures utilized at such time should comport with settled due process protections outlined in pertinent regulations and statutes. Moreover, Petitioner should not be re-arrested and re-detained due to her removability to a third country unless and until an agreement from that third country to accept Petitioner has *already been secured*. *See Medellin Martinez*, 5:25-CV-1319-OLG, Order Granting Petition for Writ of Habeas Corpus, at 5 ("This is not to say that Petitioner is immune from deportation . . . . In the event Petitioner's removal becomes incident, he may be detained incident to his deportation.").

**D.      Petitioner Should Be Released on Substantially Similar Conditions as in Her Prior OSUP.**

Having determined that Respondents violated Petitioner's right to due process, the Court considers the scope of appropriate relief for the *Zadvydas* claim. Relief for such a claim in these circumstances is release. *See Zadvydas*, 533 U.S. at 701 (stating that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). Accordingly, the Court recommends Petitioner be released subject to substantially similar conditions as were contained in her prior OSUP.

**Conclusion and Recommendation**

For the reasons discussed above, it is recommended that the Petition for Writ of Habeas Corpus, Dkt. No. 1, should be **GRANTED IN PART AND DENIED IN PART**, as provided herein. Petitioner should be released from Federal Respondents' custody under conditions of release substantially similar to conditions of her previous Order of Supervision. Any relief not recommended herein should be **DENIED**. In light of the foregoing, and upon the District Judge's

adoption of this recommendation, Petitioner's Motion to Enforce, Dkt. No. 12, should be **MOOT**.

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within seven (7) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error,

11

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

**SIGNED** this 30th day of March, 2026.

_____
**RICHARD B.  FARRER**
**UNITED STATES MAGISTRATE JUDGE**